IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No.:

**FITZ AUSTRUM,**

    **Plaintiffs,**

 v.

**FEDERAL CLEANING CONTRACTORS,
INC. d/b/a FEDERAL BUILDING
SERVICES, INC.,**

    **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

  Plaintiff, FITZ AUSTRUM ("AUSTRUM"), sues Defendant, FEDERAL CLEANING CONTRACTORS, INC. d/b/a FEDERAL BUILDING SERVICES, INC. ("FBS"), and alleges:

### Jurisdiction/Venue/Parties

  1. This is an action under 42 U.S.C. §1983 for violations of 42 U.S.C. §1981 as well as under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000 et. seq. ("Title VII") for violations of that act.

  2. This court has jurisdiction of this action pursuant to 28 U.S.C. §1331, 42 U.S.C. §§1983, 1988, and 42 U.S.C. §2000e-5(f)(3).

  3. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Florida. Venue is also proper in this Court pursuant to 42 U.S.C. §2000e-5(f)(3) because the unlawful employment practice is alleged to have been committed and the employment records relevant to such practice are maintained and administered in the Southern District of Florida.

4. AUSTRUM is a natural person and is and, at all material times, was a resident of Palm Beach County, Florida, and is otherwise sui juris.

5. AUSTRUM is an African-American legal resident of the United States with a national origin of Barbados.

6. FBS is a Florida Limited Liability Company that is and, at all material times, was in the businesses of providing commercial janitorial services and other services.

7. FBS is and, at all material times, was authorized to do business in Palm Beach County, Florida and is and, at all material times, was doing in business in Palm Beach County, Florida.

## Background/Discriminatory Acts

8. In 2006, AUSTRUM began work for Oxford Building Services, Inc. ("Oxford") which performed the janitorial services for the Mall at Wellington Green.

9. Oxford ran three shifts: "first" or "day," from 8am to 4pm; "second" or "evening" from 4pm to 12am; and "third" or "night" from 12 am to 7am. AUSTRUM was the supervisor of the night shift.

10. Angel Lopez ("Lopez"), a Hispanic, was the project manager on behalf of Oxford for the services performed by Oxford at the Mall at Wellington Green and the 2 supervisors of the other shifts were Hispanic.

11. AUSTRUM worked under Lopez for several years

12. On a number occasions, Lopez stated that he had to "look out for his people," meaning Hispanics, and that if anyone had to be "let go" it would be a non-Hispanic and not a Hispanic.

13. On more than one occasion, Lopez favored a Hispanic worker in a dispute with a non-Hispanic worker.

14. On or about April 16, 2013, it became known to the employees of Oxford working at the Mall at Wellington Green, including AUSTRUM, that FBS would be taking over as the entity providing janitorial services at the Mall at Wellington Green as of the beginning of May, 2013.

15. All employees of Oxford Building Services, Inc. working at the Mall at Wellington Green were allowed to apply for employment with FBS.

16. Lopez was hired by FBS to continue working as the project manager at the Mall at Wellington Green with the authority to make hiring decisions at that location.

17. On April 16, 2013, AUSTRUM spoke to Lopez about his (AUSTRUM's) future employment.

18. Lopez advised AUSTRUM that once FBS took over, there would no longer be a supervisor on the night shift, that there would not be a position for AUSTRUM on that shift, that AUSTRUM should either pick the day or the evening shift if he wanted to work for FBS, and that he would no longer be a supervisor.

19. Although, when AUSTRUM initially applied for employment with Oxford in approximately 2006 he requested the night shift so he could take his son to school in the morning, during their April 16, 2013 conversation, AUSTRUM specifically told LOPEZ that he would be willing to work on the day or evening shifts, though the day shift would be his preference, and that he did not need to be a supervisor.

20. On April 23, 2013, being specifically informed that AUSTRUM would be willing to work on the day or evening shifts, Lopez tried to discourage AUSTRUM from applying to work for

FBS by telling him that, though he (Lopez) was not responsible for making hiring decisions, his understanding was that there would likely not be any openings for AUSTRUM. It was not true that Lopez did not make the hiring decisions. Moreover, in the same time frame during which AUSTRUM was applying for a job with FBS or immediately thereafter, FBS, through Lopez, hired new employees who had not worked for Oxford. Thus, contrary to what Lopez told AUSTRUM, there were openings at FBS.

21. In addition to telling Lopez that he would work either the day or evening shifts and that he did not need to be a supervisor, on April 26, 2013, AUSTRUM filled out an application to work for FBS on which he indicated that he would work the day or evening shift. He also did not indicate that he was applying for a supervisory position-only that he was applying for a job.

22. On that same day, April 26, 2013, in referring to an Hispanic employee AUSTRUM supervised who had been in a dispute with an African-American employee, Lopez stated that, because the employee AUSTRUM supervised was Hispanic, she would not be losing her employment when FBS took over (if she wanted continued employment) and that AUSTRUM and the African-American employee who was in the dispute would lose their employment before the Hispanic employee.

23. As he threatened to do, Lopez, on behalf of FBS, made the decision not to hire AUSTRUM and AUSTRUM was not hired by FBS.

24. 29 Code of Federal Regulations ("CFR") §1602.1 provides, in pertinent part, that its purpose and scope is as follows:

> Section 709 of title VII (42 U.S.C. 2000e)...require the Commission to establish regulations pursuant to which employers, labor organizations, joint labor-management committees, and employment agencies subject to those Acts shall

make and preserve certain records and shall furnish specified information to aid in the administration and enforcement of the Acts.

25.     29 CFR §1602.14 entitled, "preservation of records made or kept," provides that:

Any personnel or employment record made or kept by an employer (including but not necessarily limited to ...**application forms** submitted by applicants and other records having to do with hiring...) shall be preserved by the employer for a period of one year from the date of the making of the record or the personnel action involved, whichever occurs later....Where a charge of discrimination has been filed...against an employer under title VII...the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action. The term "personnel records relevant to the charge," for example, would include... **application forms**...completed by an unsuccessful applicant and by all other candidates for the same position as that for which the aggrieved person applied and was rejected. The date of final disposition of the charge or the action means...where an action is brought against an employer...by the aggrieved person...the date on which such litigation is terminated.

26.     As alleged in Count II, below, FBS, is and, at all material times, was subject to Title VII and, therefore, was required to preserve all applications for employment for one year. Moreover, FBS had a common law duty to preserve such evidence. However, despite being required to do so, FBS disposed of applications for employment, at least of those who were not hired, including AUSTRUM's application, immediately after the employment decision was made. These actions make it much more difficult for AUSTRUM to prove that: (i) AUSTRUM was willing to work either the day or evening shifts and that he was willing to work in a non-supervisory capacity; and (ii) that the hiring practices of FBS were discriminatory because, in addition to a much greater number of Hispanics, compared with non-Hispanics, being hired by FBS, through Lopez, for work at the Mall at Wellington Green, the percentage of Hispanics hired compared with Hispanics applying was much higher than the percentage of non-Hispanics hired compared with non-Hispanics applying.[1]

---

[1] AUSTRUM intends, and hereby reserves the right to, move for sanctions including a default judgment on liability due to this spoliation of evidence.

### Count I - Violation of 42 U.S.C. §1981

27.     AUSTRUM sues FBS, realleges paragraphs 1 through 26 and further alleges:

28.     AUSTRUM is a member of a protected class because of his race and national origin or ethnicity.

29.     FBS, through its decision-maker, Lopez, failed and refused to hire AUSTRUM because of his race and national origin or ethnicity in violation of 42 U.S.C. §1981.

30.     FBS intentionally discriminated against AUSTRUM and did so with malice and/or reckless indifference to AUSTRUM's federally protected rights. Therefore, AUSTRUM is entitled to punitive damages.

31.     As a result of FBS' discriminatory conduct, AUSTRUM has been damaged. AUSTRUM's damages include: lost wages and benefits, emotional distress, humiliation, mental anguish, embarrassment, damage to his reputation, pain, suffering, and other damages.

32.     AUSTRUM has been required to retain the undersigned attorney and is obligated to pay him reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, AUSTRUM demands:

(a) a judgment requiring that FBS hire AUSTRUM;

(b) a judgment for damages against FBS including punitive damages plus pre and post-judgment interest;

(c) pursuant to 42 U.S.C. §1988(b) and (c), a judgment against FBS for the cost of this action together with reasonable attorney's fees and expert witness fees; and

(d) such other relief as justice requires.

### Count II - Violation of Title VII as to AUSTRUM

33. AUSTRUM sues FBS, realleges paragraphs 1 through 25 and further alleges:

34. At all material times, FBS was an employer within the meaning of 42 U.S.C. §2000e(b) because it is engaged in an industry affecting commerce and it has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

35. AUSTRUM is a member of a protected class because of his race and national origin.

36. FBS, through its decision-maker, Lopez, failed and refused to hire AUSTRUM because of his race and national origin in violation of 42 U.S.C. §2000e-2(a)(1).

37. FBS engaged in this discriminatory conduct with malice and/or reckless indifference to AUSTRUM's federally protected rights and has, AUSTRUM is informed and believes, in excess of 500 employees.  Therefore, AUSTRUM is entitled to punitive damages under Title VII pursuant to 29 U.S.C. 1981 in an amount which, when added to any award for pain and suffering damages, is limited to $300,000.

38. AUSTRUM has fulfilled all conditions precedent to the bringing of this action including timely filing an administrative complaint and obtaining a "right to sue" notice, a copy of which is attached hereto as Exhibit "A."

39. AUSTRUM has been required to retain the undersigned attorney and is obligated to pay him reasonable attorney's fees and costs.

40. As a result of FBS' discriminatory conduct, AUSTRUM has been damaged. AUSTRUM's damages include: lost wages and benefits, emotional distress, humiliation, mental anguish, embarrassment, damage to his reputation, pain, suffering, and other damages.

41. AUSTRUM has been required to retain the undersigned attorney and is obligated to

pay him reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, AUSTRUM demands:

(a) a judgment requiring that FBS hire AUSTRUM;

(b) a judgment for damages against FBS including punitive damages in an amount as allowed by law plus pre and post-judgment interest;

(c) pursuant to 42 U.S.C. §2000e-5(k), a judgment against FBS for the cost of this action together with reasonable attorney's fees and expert witness fees; and

(d) such other relief as justice requires.

### Demand for Jury Trial

Plaintiffs demand a trial by jury of all issues so triable.

Respectfully submitted,

**BARRY S. BALMUTH, P.A.**
By: **/s/ Barry S. Balmuth**
**BARRY S. BALMUTH, B.C.S.**
Florida Bar No. 868991
Counsel for Plaintiff
11770 U.S. Highway One, Suite 406
North Palm Beach, Florida 33408
Telephone: (561) 242-9400
Facsimile: (561) 366-2650
E-mail: balmuthlaw@alum.emory.edu