UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:14-cv-81245-KAM

FITZ AUSTRUM,

      Plaintiff,

vs.

FEDERAL CLEANING CONTRACTORS,
INC. d/b/a FEDERAL BUILDING
SERVICES, INC.,

      Defendant.

_____/

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Renewed Verified Motion for Inference Regarding Contents of Discarded Employment Application (DE 27). On December 15, 2015, the Court held an evidentiary hearing on the motion. The motion is ripe for review. For the following reasons, the Court grants the motion.

### I. Introduction

In this employment discrimination case, Plaintiff Fitz Austrum alleges that Defendant Federal Cleaning Contractors, Inc. ("Federal") did not hire him based on improper discriminatory reasons. Federal asserts that it did not hire Austrum because he would only work the night shift and a position for that shift was unavailable. Austrum claims that this explanation is pretextual because he indicated on his application that he was applying for "all shifts." But the application is lost. In violation of federal regulations, Federal discarded it. The Court finds that an adverse inference instruction is warranted to cure the prejudice resulting from Federal's spoliation.

1

## II. Background

In 2006, Austrum, who is African-American, began working for Oxford Building Services, Inc. ("Oxford"), which performed janitorial services for the Mall at Wellington Green. (DE 1 ¶¶ 5, 8; DE 8 ¶ 8.) Oxford ran three shifts: a day shift, an evening shift, and a night shift. (DE 1 ¶ 9; DE 8 ¶ 9.) When he initially applied for employment with Oxford, Austrum requested the night shift so he could take his son to school in the morning. (DE 1 ¶ 19.) When employed by Oxford, Austrum was a night-shift supervisor. (DE 1 ¶ 9.)

Angel Lopez, who is Hispanic, was a project manager for Oxford at the mall. (DE 1 ¶ 10; DE 8 ¶ 10.) According to Austrum, on several occasions Lopez made comments indicating a preference for Hispanic workers over non-Hispanic workers. (DE 1 ¶¶ 12–13, 22.) For example, Austrum alleges that Lopez said he had to "look out for his people" and that if anyone had to be "let go" it would be a non-Hispanic employee rather than a Hispanic employee. (DE 1 ¶ 12.)

In April 2013, the Oxford employees working at the Mall at Wellington Green, including Austrum, were informed that, as of May 2013, Federal would take over Oxford's role as the contractor providing janitorial services at the mall. The Oxford employees were further advised they could apply for employment with Federal.  (DE 1 ¶ 14–15.)

Federal hired Lopez to continue working as a manager at the mall and Lopez had at least some input into hiring decisions for that location. (DE 1 ¶ 16; DE 8 ¶ 16.) Austrum claims that Lopez told him that once Federal took over for Oxford, there would no longer be a night-shift supervisor and there would not be a position available for Austrum on that shift. (DE 1 ¶ 17–18.) Lopez allegedly told Austrum that he should pick either the day or evening shift if he wanted to work for Federal and that he would no longer be a supervisor. (DE 1 ¶ 18.)

2

According to Austrum, during this conversation he told Lopez that he was willing to work on the day or evening shifts and that he did not need to be a supervisor. (DE 1 ¶ 19.) In addition to orally telling Lopez this, Austrum claims that he also submitted an employment application that included the same information. (DE 1 ¶ 21.) Federal's employment application requires an applicant to fill in the blanks next to "Position Applied For" and "Shift Position." Austrum contends that he wrote "housekeeping" in the blank next to "Position Applied For" (which indicated that he did not require a supervisor position) and "all shifts" in the blank next to "Shift Position." Federal concedes that Austrum submitted an application. Lopez does not recall what the application said.

In late April or early May 2013, Federal decided to not hire Austrum. (DE 1 ¶ 23; DE 27 at 4; DE 17 at 3.) Despite regulatory obligations to retain applications completed by unsuccessful applicants, Federal discarded Austrum's application approximately one month later. (Def.'s Resp. To Pl.'s Interrog. Nos. 12–13 (DE 27-3); Lopez Dep. 33:1–34:25, June 11, 2015 (DE 27-4).)

In September 2013, Austrum filed an employment complaint of discrimination with the Florida Commission on Human Relations. (DE 17-1.) Austrum later filed suit in this Court after receiving a Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC"). (DE 1; DE 1-1.)

In response to an interrogatory, Federal explained that it did not hire Austrum "because of budgetary constraints and his stated inability to work other than the third [night] shift." (DE 27-2 at 4.) According to Federal, "the hours budgeted did not allow for a third [night] shift supervisor position" and "Mr. Lopez had no position to offer to Mr. Austrum because Mr. Austrum stated to Mr. Lopez that he could only work third shift as a result of his family sharing one vehicle for transportation and his obligations of taking his children to school in the morning." (DE 27-2 at 4.)

Federal's explanation for not hiring Austrum contradicts Austrum's version of events, which could be corroborated by Austrum's employment application if Austrum's version is accurate. Austrum thus seeks an adverse inference jury instruction based on Federal's failure to retain his application in violation of federal regulations. Austrum argues that if the application was available, it would assist him in proving that Federal's alleged reason for not hiring him is pretextual.[1]

### III. Legal Standard

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir.1999)). A district court has "broad discretion" to impose sanctions for spoliation, which is derived "from the court's inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases." *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). "[S]anctions for discovery abuses are intended to prevent unfair prejudice to litigants and to insure the integrity of the discovery process." *Id.*

### IV. Discussion

Pursuant to the authority conferred upon it by 42 U.S.C. § 2000e-8(c), the EEOC promulgated a regulation requiring employers covered by Title VII of the Civil Rights Act of 1964

---

[1] In his motion, Austrum also argued that if Federal did not violate its regulatory obligations to retain applications of unsuccessful applicants, he may have been able to show that Federal disproportionately hired Hispanic applicants or that Federal disproportionately rejected African-American applicants. At the evidentiary hearing on this motion, Austrum's counsel withdrew this asserted basis for an adverse inference. Accordingly, the Court will not consider this argument, and the adverse inference instruction will be limited to the contents of Austrum's application rather than all of the discarded applications. The Court expresses no opinion at this time whether Austrum may argue at trial that the discarding of all of the applications might provide statistical proof of disproportionate hiring.

to preserve, *inter alia*, any applications submitted by applicants for one year from the making of the record or the personnel action involved, whichever is later. 29 C.F.R. § 1602.14 (2015). That regulation also requires that once a charge of discrimination is filed, the employer must preserve all personnel records relevant to the charge or action until its final disposition. *Id.* Such "personnel records" include "application forms or test papers completed by an unsuccessful applicant." *Id.*

There is no dispute that Federal failed to preserve Austrum's application in violation of § 1602.14. Federal admits that it is an employer covered by Title VII. (DE 8 ¶ 26.) Even absent Austrum's filing of a charge of discrimination, Federal was required to maintain Austrum's application for one year from the date it rejected Austrum's application. Once Austrum filed a charge of discrimination in September 2013, the preservation period automatically extended to the termination of this litigation. Thus, since the date it was submitted to Federal, Federal has always been under a legal duty to preserve Austrum's application.

Though it concedes it violated § 1602.14, Federal argues that an adverse inference instruction should not be given to the jury in this case because its violation was not in bad faith. Federal claims that it had a "long-standing practice to not retain applications for employment of candidates who are not selected for employment with the company." (Def.'s Resp. To Pl.'s Interrog. No. 12 (DE 27-3).) According to Federal, this practice was in place because the "administrative functions for most of [Federal's] field locations are performed from office space that is either shared with non-[Federal] personnel or that is not restricted to non-[Federal] personnel." (Def.'s Resp. To Pl.'s Interrog. No. 13 (DE 27-3).) Therefore, Federal claims it did not require its project managers to retain applications of candidates who were not hired because Federal lacked sufficient space to store those applications

5

or to secure the information within them.[2] (*Id.*) Federal asserts that the applications were discarded pursuant to this long-standing practice before it had notice of Austrum's discrimination claim.

In support of his motion, Austrum relies on case law from outside the Eleventh Circuit holding that—even absent a defendant's malicious motive—a plaintiff is entitled to a rebuttable presumption that records destroyed in violation of recordkeeping regulations under Title VII would have supported his or her case. *See Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 108–09 (2d Cir. 2001); *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1419 & n.5 (10th Cir. 1987). Austrum concedes that Federal did not discard his application for the purpose of prejudicing his case or with any other malicious motive. He argues that Federal's intentional discarding of his application in violation of federal law is sufficient alone to entitle him to an adverse inference.

Neither party cites Eleventh Circuit case law on spoliation and it does not appear that the Eleventh Circuit has addressed the issue before the Court.[3] Decisions of other circuit courts of appeal support Austrum's position that an employer's violation of a Title VII recordkeeping regulation, even

---

[2] Federal began retaining applications in compliance with federal law after Austrum filed his claim. Additionally, at the evidentiary hearing, Lopez testified that he was capable of preserving the applications at the time he discarded Austrum's application.

[3] In its response, Federal relies solely on an Eleventh Circuit case that does not involve spoliation sanctions. In *EEOC v. Alton Packaging Corp.*, the EEOC sought prospective injunctive relief against an employer that had a practice of destroying job applications in violation of a former version of 29 C.F.R. § 1602.14. 901 F.2d 920, 926 (11th Cir. 1990). The Eleventh Circuit affirmed the district court's refusal to issue an injunction because injunctive relief was only mandatory if there was "abundant evidence of past discrimination," and the employer's past regulatory violations did not evidence past discrimination. *Id.* The only similarity between this case and *Alton* is that the employer had a practice of flouting § 1602.14. *Alton* is a case about injunctive relief and does not address spoliation or adverse inferences. *Alton* is thus irrelevant to the issue before the Court. Furthermore, the Court's grant of an adverse inference does not equate Federal's regulatory violations with evidence of discrimination. It merely provides a presumption regarding the contents of the discarded application.

without ill-intent, entitles a plaintiff employee or applicant to an adverse inference regarding the contents of the discarded records.

In *Hicks*, for example, the Tenth Circuit held that an employer's destruction of job performance records in violation of § 1602.14 entitled the plaintiff "to the benefit of a presumption that the destroyed documents would have bolstered her case."[4] 833 F.2d at 1418–19. This was so even though the court "observe[d] that the record does not support the assertion that Gates acted in bad faith in destroying the documents. This is not the case where an employer has selectively retained certain self-serving documents and discarded the remainder in a particular time period." *Id.* at 1419 n.5.

Relying partially on *Hicks*, the Second Circuit ruled similarly in *Byrnie*. Like here, the employer in *Byrnie* destroyed records subject to an EEOC recordkeeping regulation pursuant to a policy of destroying such records soon after the hiring process was completed, rather than merely by accident. 243 F.3d at 109. The *Byrnie* court held that the destruction of records in violation of a

---

[4] The Court rejects Federal's argument at the evidentiary hearing that *Hicks* supports its position. Federal suggested that the loss of the application actually hurt *its* case because the application may have said that Austrum was only willing to work the night shift. Federal then quoted the portion of *Hicks* that stated the district court on remand should determine whether the presumption in the employee's favor was convincingly rebutted. Federal is mistaken. First, it is obvious that the application *may* have supported either party's case. The purpose of adverse inferences is to presume that lost or destroyed evidence would have supported one side because there is no way to know what the document actually said. The presumption is against the party that had control of the evidence and a legal duty to preserve it, which here is Federal. If accepted, Federal's argument would eviscerate adverse inferences as a permissible sanction for spoliation because every party facing a spoliation motion can argue that the lost evidence might have supported it rather than the other party. Second, Federal takes *Hicks* out of context when it argues that the Court should consider whether Federal can rebut the presumption that the application would have favored Austrum's case. Once the Court imposes the rebuttable presumption, it is the jury's job to determine whether Federal sufficiently rebutted the presumption. The only reason the *Hicks* court said that the district court on remand was to determine whether the employer rebutted the presumption was that *Hicks* involved a bench trial. 833 F.2d at 1411.

federal regulation analogous to § 1602.14 could support an adverse inference, "even if litigation involving the records is not reasonably foreseeable," where the party seeking the inference is "a member of the general class of persons that the regulatory agency sought to protect in promulgating the rule." *Id.* That element was satisfied where the violation of an EEOC recordkeeping regulation is used to justify an adverse inference in an employment discrimination suit. *Id.*

The court also stated that the other elements of spoliation had to be met, including that "the records were destroyed with a culpable state of mind" and that the records were relevant to a party's claim or defense. *Id.* Importantly, however, a "culpable state of mind" is not equivalent to an intent to prejudice the opposing party's case or to knowingly violate a regulation. *Id.* A party may have a culpable state of mind "where, for example, the records were destroyed knowingly, even if without intent to violate the regulation." *Id.* Because bad faith, which the court defined as "an intent to obstruct the opposing party's case," was not required, the "intentional destruction of documents in the face of a duty to retain those documents is adequate" to support an adverse inference. *Id.*

In determining the standard a district court should apply in the Eleventh Circuit when considering a motion for an adverse inference based on spoliation, the Court starts with the case of *Bashir v. Amtrak*, 119 F.3d 929 (11th Cir. 1997) (per curiam). There, the Eleventh Circuit held that "an adverse inference is drawn from a party's failure to preserve evidence *only* when the absence of that evidence is predicated on bad faith." *Id.* at 931(emphasis added). Later Eleventh Circuit opinions, however, can be read to suggest that "bad faith" is merely a factor to consider rather than a prerequisite for granting an adverse inference. *See Flury*, 427 F.3d at 946; *see also Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009) ("To determine whether spoliation sanctions are warranted, a court must consider the factors identified in *Flury v. Daimler Chrysler Corp.*, 427

8

F.3d 939.").

In *Flury*, the Eleventh Circuit reversed a district court's decision to *not* dismiss a case as a sanction for spoliation, even though there was no evidence that the spoliating party acted with malice. 427 F.3d at 946–47. *Flury* was a products liability suit in which the plaintiff failed to preserve a pick-up truck he crashed, which he alleged had a defective airbag system. *Id.* at 940–42. Though the court held that federal law applies to spoliation sanctions in diversity cases, the court looked to Georgia law (specifically *Bridgestone/Firestone North American Tire, LLC v. Campbell*, 574 S.E.2d 923, 927 (Ga. Ct. App. 2002)) because the "law in this circuit does not set forth specific guidelines" and "Georgia state law on spoliation is wholly consistent with federal spoliation principles." *Flury*, 427 F.3d at 944. Therefore, even though the *Flury* relies on Georgia law, *Flury* explicates the principles of federal spoliation law in this circuit.

The *Flury* court held that in determining the appropriateness of a spoliation sanction

> the court must consider: (1) whether the defendant was prejudiced as a result of the destruction of evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the plaintiff acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence was not excluded.

*Id.* at 945. The court specifically identified "a jury instruction on spoliation of evidence which raises a presumption against the spoliator" as a potential sanction that could be imposed upon consideration of these factors. *Id.*

Regarding the "bad faith" factor, the *Flury* court said, "Dismissal represents the most severe sanction available to a federal court, and therefore should only be exercised where there is a showing of bad faith and where lesser sanctions will not suffice." 427 F.3d at 944. The court explained, however, that "Georgia law does not require a showing of malice in order to find bad faith." *Id.* at

946 (citing *Bridgestone/Firestone*, 574 S.E.2d at 927). Instead, the "bad faith" factor requires a court to "weigh the degree of the spoliator's culpability against the prejudice to the opposing party." *Id.* Under the facts of the case, the Eleventh Circuit held that dismissal was the only appropriate sanction because the prejudice to the defendant was great and "culpability rested solely upon the plaintiff." *Id.*

District courts in this circuit have struggled with how to follow *Bashir* and *Flury* simultaneously, which are both binding. At least one court has concluded that *Flury* demoted bad faith from a prerequisite for an adverse inference to "only one factor to consider." *Brown v. Chertoff*, 563 F. Supp. 2d 1372, 1381 (S.D. Ga. 2008). Other courts have disagreed and follow *Bashir* because it is the earlier decision. *See Woodard v. Wal-Mart Stores E., LP*, 801 F. Supp. 2d 1363, 1372 (M.D. Ga. 2011) ("To the extent that *Flury* creates a conflicting line of authority where bad faith is only a factor to be considered, the Court must follow the law set down in *Bashir* because it is the earlier authority."); *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1328 n.16 (S.D. Fla. 2010) ("*Flury* was a panel decision and as such did not overrule the prior panel decision in *Bashir* requiring a showing of bad faith." (citation omitted)). Noting this disagreement, one court concluded that "[w]hile the degree of bad faith necessary to impose sanctions may not be entirely clear, it is clear that simple negligence is not enough but actual malice is not required." *Stanfill v. Talton*, 851 F. Supp. 2d 1346, 1362 (M.D. Ga. 2012).

Though without analysis or discussion of the possible inconsistency between the cases, the Eleventh Circuit has read *Bashir* and *Flury* harmoniously. In *Mann v. Taser International, Inc.*, the Eleventh Circuit cited both *Bashir* and *Flury* when addressing the standard for imposing an adverse inference. 588 F.3d 1291, 1310 (11th Cir. 2009). The *Mann* court stated, "While this circuit does not

10

require a showing of malice in order to find bad faith, mere negligence in losing or destroying records is not sufficient to draw an adverse inference." *Id.*

It appears that imprecise use of the phrase "bad faith" is largely responsible for the confusion among district courts in this circuit, even after *Mann*. "Bad faith" is an often inconsistently used phrase that has different meanings in different legal contexts. *Compare McPherson v. Emps.' Pension Plan of Am. Re-Ins. Co.*, 33 F.3d 253, 256 (3d Cir. 1994) ("[B]ad faith normally connotes an ulterior motive or sinister purpose."), *with United States v. Shaygan*, 652 F.3d 1297, 1312–14 (11th Cir. 2011) (discussing contexts in which bad faith is an objective standard without regard to underlying motives). Sometimes courts use the term "bad faith" synonymously with ill-intent. *See, e.g.*, *Bynrie*, 243 F.3d at 109 (distinguishing between culpability and "bad faith," defined as "an intent to obstruct the opposing party's case"). This Court concludes, at least in the spoliation context, that *Flury* clarifies "bad faith" is defined by culpability[5] and resulting prejudice. 427 F.3d at 946. While malice is, of course, relevant to the degree of a spoliating party's culpability, malice is not required for a finding of bad faith in this context. *Id.*

Following *Mann*, the Court also reads *Bashir* and *Flury* harmoniously. A court imposing

---

[5] The Court notes that a party may be culpable even though it acts without ill-will. *See McPherson*, 33 F.3d at 256–57 ("In a civil context, culpable conduct is commonly understood to mean conduct that is 'blameable; censurable; ... at fault; involving the breach of a legal duty or the commission of a fault.... Such conduct normally involves something more than simple negligence.... [On the other hand, it] implies that the act or conduct spoken of is reprehensible or wrong, but not that it involves malice or a guilty purpose." (quoting *Black's Law Dictionary* (6th ed. 1990) (alterations in original))); *see also Byrnie*, 243 F.3d at 109. "A party's level of culpability falls 'along a continuum of fault—ranging from innocence through the degrees of negligence to intentionality.'" *Irvin v. City of Shaker Heights*, No. 1:06 CV 1779, 2011 WL 679936, at *2 (N.D. Ohio Feb. 16, 2011) (citation omitted); *see also Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002). While negligence is a degree of culpability, the Eleventh Circuit requires that a party's culpability rise above mere negligence before an adverse inference instruction may be imposed. *Mann*, 588 F.3d at 1310.

sanctions for spoliation must consider all the factors identified in *Flury*. The *Flury* court stated that all the factors *must* be considered, but it did not address whether any factor was required to be found against the spoliating party for a court to impose an adverse inference.[6] Consistent with *Bashir*, however, the "bad faith" factor must be present for a court to impose an adverse inference.[7] But consistent with *Flury*, bad faith in this context does not require malice and is defined by weighing "the degree of the spoliator's culpability against the prejudice to the opposing party." *Flury*, 427 F.3d at 946. Furthermore, the spoliator's degree of culpability must be more than mere negligence. *Mann*, 588 F.3d at 1310. Under this view, Eleventh Circuit spoliation principles are consistent with *Hicks* and *Byrnie*.[8]

Applying the *Flury* factors to this case, the Court finds that an adverse inference instruction is appropriate. Austrum certainly is prejudiced as a result of Federal discarding his application. Without the application, it is only his word against Lopez's as to whether he agreed to taker any shift

---

[6] The *Flury* court did say that a showing of bad faith was required to support dismissal as a sanction. 427 F.3d at 944. Contrary to *Bashir*, this statement may imply that sanctions less severe than dismissal may be imposed absent "bad faith," however defined. In light of *Bashir* and *Mann*, however, the Court declines to interpret *Flury* as condoning an adverse inference sanction absent a finding of bad faith. Because the *Flury* court held that dismissal was the appropriate sanction, *Flury* merely addresses whether bad faith is required for dismissal, and is silent as to whether any factor is required for an adverse inference. *Bashir* previously answered that bad faith is also required for an adverse inference instruction, and after *Flury* the *Mann* court reaffirmed that holding. *Flury*, however, clarifies what is meant by "bad faith."

[7] Because the Court finds that all the other *Flury* factors are satisfied here (aside from the factor regarding expert testimony, which is inapplicable), the Court need not decide whether the remaining factors are also prerequisites or merely considered but not required.

[8] While *Byrnie* and *Hicks* hold that "bad faith" is not required for an adverse inference, they define "bad faith" as equivalent to ill-intent. In the spoliation context, *Flury* defines "bad faith" more similarly to how the *Byrnie* court defined culpability. Aside from semantics, *Byrnie* and *Hicks* are consistent with Eleventh Circuit spoliation law. Under *Flury*, *Hicks*, and *Byrnie*, a malicious motive is not required to impose an adverse inference sanction.

or insisted on the night shift. The application would have provided documentary proof resolving this issue. The prejudice can be cured by a rebuttable presumption regarding the contents of the application. This is the least harsh sanction to cure the prejudice to Austrum. The practical importance of the evidence is high given the factual dispute regarding whether Austrum told Federal he was willing to work any shift and not as a supervisor.[9]

Regarding the required "bad faith" factor, the Court finds that Federal acted in bad faith as that term is defined in *Flury*. Federal has no legitimate excuse for having a practice of discarding applications that it had a legal obligation to preserve under federal regulations. Federal's culpability rises above mere negligence. This is not a case where the application was accidentally destroyed while the employer otherwise complied with its legal obligations. Instead, the discarding of the applications was intentional. Whether intentionally or ignorantly, Federal completely disregarded the EEOC's recordkeeping regulation, which was promulgated specifically to ensure that personnel records such as employment applications are preserved for employment discrimination litigation. *See EEOC v. Am. Nat'l Bank*, 652 F.2d 1176, 1195 (4th Cir. 1981) ("The affirmative obligation imposed by s 1602.14(a) to preserve records was clearly designed to protect Title VII plaintiffs from an employer's destruction of possibly damaging evidence."). Federal may not have known of Austrum's claim when it discarded his application, but the regulation put Federal on notice of the application's importance to potential employment discrimination litigation and the need to preserve it.

While the Court does not find that Federal acted deliberately to hinder Austrum's case, Federal had sole control over the application and shirked its legal duty to preserve it. Under the facts

---

[9] The factor regarding expert testimony is inapplicable here. *See Pinkney v. Winn-Dixie Stores, Inc.*, No. CV214-075, 2015 WL 858093, at *7 (S.D. Ga. Feb. 27, 2015) ("The fifth *Flury* factor is irrelevant where, as here, the spoliated evidence is not the subject of expert testimony.")

13

of this case, Federal is sufficiently culpable, and the prejudice to Austrum is sufficiently high, to warrant a finding of bad faith as defined in *Flury*. *See Watson v. Edelen*, 76 F. Supp. 3d 1332, 1344 (N.D. Fla. 2015) (noting that under *Flury* "'bad faith' depends in large part upon the importance of the evidence to a fair trial and the extent to which the spoliating party had notice of that importance and of the need to preserve the evidence").

## V. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Renewed Verified Motion for Inference Regarding Contents of Discarded Employment Application (DE 27) is **GRANTED**. The jury instructions will include a rebuttable presumption that Austrum's application said "housekeeping" in the blank next to "Position Applied For" and "all shifts" in the blank next to "Shift Position." The Court expects the parties to work together to draft a proposed jury instruction consistent with this Order to be submitted with their other proposed jury instructions.

**DONE AND ORDERED** in chambers at West Palm Beach, Palm Beach County, Florida, this 8th day of January, 2016.

KENNETH A. MARRA
United States District Judge

14